IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Zachary Marquis Fowler, | ) | C/A No. 0:15-1718-TMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden McKie, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Zachary Marquis Fowler, a self-represented state prisoner, filed this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant

to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation

on the respondent's motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), Fowler was advised of the summary judgment and dismissal

procedures and the possible consequences if he failed to respond adequately to the respondent's

motion. (ECF No. 29.) Fowler filed a response in opposition to the respondent's motion. (ECF No.

31.) Having carefully considered the parties' submissions and the record in this case, the court

concludes that the respondent's motion for summary judgment should be granted and Fowler's

Petition denied.

## BACKGROUND

Fowler was indicted in January 2007 in Greenville County for murder, armed robbery and

possession of a weapon during the commission of a violent crime, assault with intent to kill, assault

and battery with intent to kill, and possession of a pistol under twenty-one years of age (2007-GS-23-

245, -246, -247, -248, & -249). (App. at 699-708, ECF No. 28-3 at 201-10.) Fowler was represented

by Thomas Creech, Esquire, and on August 13-15, 2007 was tried before a jury and found guilty as

charged.  The circuit court sentenced Fowler to life imprisonment for murder and to concurrent sentences of five years' imprisonment for possession of a weapon, thirty years' imprisonment for armed robbery, twenty years' imprisonment for assault and battery with intent to kill, twenty years' imprisonment for assault with intent to kill, and one year's imprisonment for possession of a pistol under the age of twenty-one.  (App. at 606-07, ECF No. 28-3 at 108-09.)

Fowler timely appealed and was represented by Joseph L. Savitz, III, Esquire, Chief Appellate Defender, who filed a final brief on Fowler's behalf that presented the following issue:

> The trial judge committed reversible error by declining to instruct the jury on voluntary manslaughter.

(ECF No. 28-4.)  The State filed its final brief on June 9, 2009.  (ECF No. 28-5.)  In an unpublished opinion filed July 21, 2010, the South Carolina Court of Appeals affirmed Fowler's convictions and sentences.  (State v. Fowler, Op. No. 2010-UP-372 (S.C. Ct. App. July 21, 2010); ECF No. 28-6.)

Fowler then filed a petition for writ of certiorari in the Supreme Court of South Carolina. (ECF No. 28-7.)  The State filed its return thereafter.  (ECF No. 28-8.)  By letter dated October 5, 2011, the Clerk of the Supreme Court of South Carolina informed the parties that the petition had been denied.  (ECF No. 28-9.)  The remittitur was issued on October 7, 2011.  (ECF No. 28-10.)

Fowler filed a *pro se* application for post-conviction relief ("PCR") on August 10, 2012, in which he raised the following claims:

> 10. (a) I WAS ILLEGALLY SEIZED WHICH VIOLATES MY 4TH & 14TH AMENDMENT CONSTITUTIONAL RIGHTS.
>
> 11. (a) IN AFFECTIVE ASSISTANCE OF TRAIL COUNSEL & DIRECT APPEAL ATTORNEY

(See Fowler v. State of South Carolina, 2012-CP-23-5182; App. at 610-20, ECF No. 28-3 at 112-22) (errors in original).  The State filed a return.  (App. at 623-28, ECF No. 28-3 at 125-30.)  Fowler,



through counsel, filed an amended PCR application on December 16, 2013, in which he raised the

following claims:

    1.    Counsel was ineffective in that Counsel advised Applicant not to testify during the Jackson v. Denno hearing in the trial of this case;

    2.    Counsel was ineffective in that Counsel failed to adequately and effectively challenge the voluntariness of Applicant's statement and the absence of coercion;

    3.    Counsel was ineffective in that Counsel failed to adequately and effectively challenge the legality of Applicant's detention;

    4.    Counsel was ineffective in that Counsel failed to adequately and effectively challenge the legality of Applicant's arrest warrants;

    5.    Counsel was ineffective in that Counsel failed to adequately and effectively challenge the legality of the State's search warrants;

    6.    Counsel was ineffective in that Counsel failed to adequately and effectively challenge Applicant's indictments;

    7.    Counsel was ineffective in that Counsel failed to incorporate the existence of two .22 live bullets found in victims' automobile into the defense in the trial of this case[.]

(App. at 621-22, ECF No. 28-3 at 123-24.)   On December 17, 2013, the PCR court held an

evidentiary hearing at which Fowler appeared and testified and was represented by Caroline

Horlbeck, Esquire.  (App. at 629-89, ECF No. 28-3 at 131-91.)  By order filed February 17, 2014,

the PCR court denied and dismissed with prejudice Fowler's PCR application.  (App. at 690-98, ECF

No. 28-3 at 192-200.)

On appeal, Fowler was represented by David Alexander, Appellate Defender, who filed a

Johnson[1] petition for a writ of certiorari that presented the following question:

> Whether trial counsel's failure to have petitioner testify at the pretrial Jackson v.
> Denno, 378 U.S. 368 (1964) hearing constituted ineffective assistance of counsel in
> derogation of petitioner's Sixth Amendment rights?

(ECF No. 28-11.)  On February 19, 2015, the Supreme Court of South Carolina issued an order

denying Fowler's petition for a writ of certiorari and granting counsel's request to withdraw.  (ECF

No. 20-12.)  The remittitur was issued March 9, 2015.  (ECF No. 20-13.)  This action followed.

## FEDERAL HABEAS ISSUES

Fowler's federal Petition for a writ of habeas corpus raises the following issues, quoted

verbatim:

> **Ground One:** Trail judge committed reversible error by declining to instruct the jury
> on voluntary manslaughter.
>
> **Supporting Facts:** Prior to this incident, I had never come into contact with Ms.
> Susan Galloway, Mr. Ron Harris, or Mr. Gary Powell.  On the day of this incident
> they were seeking to buy drugs from me.  As the transation progressed from "did I
> have drugs" to "the amount I was able to supply", I became nervous.  Ms. Galloway
> asked to buy $40 worth of crack cocain while Mr. Harris asked to by $400 worth of
> crack cocain This was very unusual and drew red flags for me because its odd for
> someone to want a large quantity before . . . testing the quality, which made me think
> I could possibly be robbed.  As we began to finalize the transaction Ms. Galloway
> started to hand me the money but snatched it away at the last minute reaching toward
> her purse.  During the time Mr. Harris is sitting in the back seat with money on his
> lap, but as soon as she began to reach toward the floor board he begins to reach in his
> left pocket that looks to have a bulge in it.  As these things happened simultaneously,
> I freaked out and reacted by shooting at everyone because I thought they had guns
> getting ready to hurt me.  At the position I was in I couldn't run or hide.

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California,
386 U.S. 738 (1967) to post-conviction appeals).  Anders requires that counsel who seeks to
withdraw after finding the "case to be wholly frivolous" following a "conscientious examination"
must submit a brief referencing anything in the record that arguably could support an appeal; furnish
a copy of that brief to the defendant; and after providing the defendant with an opportunity to
respond, the reviewing court must conduct a full examination of the proceedings to determine if
further review is merited.  Anders, 386 U.S. at 744.



**Ground Two:** Illegal seizure

**Supporting Facts:** Upon arriving at 17b Appaloosa Dr. Det. Conroy had the description of black male, tall, thin (Tr. P. 65, 3-6) as the suspect, and Diana Tisdale had been n v ctum of a crime at the address (Tr. P. 66, 5-7). He didn't know who owned the trailer, lived at the trailer, or if the people - Applicant and Valencia - lived at the trailer (Tr. P. 67, 23-25 Tr. P. 68, 1-8) After arriving at the trailer he was greeted by the Applicant at the door. This is when and where Det. Conroy grabbed me, handcuffed me, and put me in the patrol car because I "looked nervous" (Tr. P. 426, 14-20 Tr. P. 49, 6-16) Det. Conroy expressed he was concerned I was hot and decided to take me into a cooler place. When Mr. Creech asked him . . . was it necessary to take me to the patrol vehical he stated he wanted to separate me and Valencia from hearing one another (Tr. P. 68, 19-25 Tr. P. 69, 1-13) Det. Conroy goes on to say he was detaining me waiting for a photo line up. (Tr. P. 69, 14-17) This photo line up was never assembled, nor shown to victums. (Tr. P. 70, 2-11) As I sat in the patrol vehical no questions were asked of me to verify or dispel his suspicion (Tr. P. 74, 14-25) During this entire process I was told I was not free to leave (Tr. P. 79, 25 Tr. P. 80, 1-7) Det. Conroy states he decided not to get a photo line up after the verbal statement from Valencia, and receiving the written statement from me. (Tr. P. 80, 8-10) Det. Conroy claims Valencia stated "He shot them" (Tr. P. 76, 14-25 Tr. P. 77, 1-25)

On the contrary to this Det. John Hamlett heard differently. Det. Hamlett was instructed to stay with Valencia in the house by Det. Conroy detaining her. (Tr. P. 129, 19-25 Tr. P. 130, 1-15) Det. Hamlett was present during the time Valencia supposedly made this statement, but claims he never heard her say "He shot them" or anything like that. (Tr. P. 130, 20-25 Tr. P. 131, 1-5) The written statement received from me was almost three hours after the initial seizure began.

**Ground Three:** Counsel failed to adequately and effectively challenge the legality of the states search warrants.

**Supporting Facts:** There is no "search warrant" for 17B Appaloosa Dr. You will see two different affidavits, but the last page that has "Form approved by S.C. attorney general section 17-13-160 March 15, 1918" at the top right hand corner are the same document. This form is a duplicate purtaining to "a blue blue buck century four door with tag number SC/278 NST" Furthermore, the information in the affiants belief is false and supplied falsely. Det. Conroy states he did not know who owned the trailer, rented the trailer, or if the people inside the . . . trailer lived there when he first arrived at 17B Appaloosa Dr. (Tr. P. 67, 24-25 Tr. P. 68, 1-8) Det. Matt Justice claims he heard about the search warrant being obtained a short time after they arrived at 17B Appaloosa Dr. about thirty minutes after. (Tr. P. 96, 7-14) No where in the record do we see any of the Detectives ask or learn any of this information. We do see me being detained and never asked for identification or anything else, while being told a search warrant was being obtained. (Tr. P. 74, 14-25 Tr. P. 75, 1-11) We also see Det. Conroy walking in the house, introducing himself to Valencia, and never asking for identification. (Tr. P. 68, 9-15) Still yet, the information he

*PJG*

gave to Det. Monty Mize was "the driver of the vehical is also the legal resident of 17B Appaloosa Dr." Not only was this information false, it was also relayed to the magistrate judge improperly. Det. Mize received this false information from Det. Conroy and obtained a search warrant without informing the magistrate judge the information caim from Det. Conroy, a third party source. (Tr. P. 149, 16-25 Tr. P. 150, 1-25 Tr. P. 151, 1-25 Tr. P. 152, 1-25 Tr. P. 153, 1-25)

**Ground Four:** Counsel failed to adequately and effectively challenge the legality of Applicant's arrest warrants
**Supporting Facts:** The magistrate judge did not sign the original copy nor my defendant's copy arrest warrant. Mr. Creech did not object to this. The probable cause in arrest warrant affidavits, in part, states an unproved accusation. The other part is evidence obtained after the detention began was the sole reason of probable cause. The statement was received three maybe four hours after the initial handcuffing and placement in patrol vehical occured. (Tr. P. 53, 24-25 Tr. P. 54, 1-17)

**Ground Five:** Counsel failed to adequately and effectively challenge Applicants indictments
**Supporting Facts:** Applicants indictments were not procured legally and trail counsel did not object. The indictments do not comply with the Rules of Criminal Procedures in South Carolina according to rule three (c), nor were they accepted at the Presentment by presiding judge John C. Few. On transcript pages 688 & 689 you see documentation from the Greenville County Clerk of Court sending me the Presentment. On the othere you see the Presentment that has no signature nor date. Mr. Creech also failed to object to this as well.

**Ground Six:** Counsel failed to incorporate the existence of two .22 live bullets found in victims automobile into the defense in the trail of this case
**Supporting Facts:** I thought Ms. Galloway was reaching for a weapon. I thought Mr. Harris was going in his pocket to get a gun. Our defense was these individuals were plotting to rob me. A twenty-two caliber gun could possibly fit in someone's pocket. This evidence as our defense may have swayed the jury our way. Mr. Creech didn't make it an exibit nor did he put it in his closing argument that they were there. (Tr. P. 311, 16-25)

**Ground Seven:** Counsel advised Applicant not to testify during Jackson V. Deno hearing in the trial of this case.
**Supporting Facts:** Mr. Creech advised me not to testify at the Jackson V. Deno hearing because he didn't want the state to know what my defense was. He failed to realize this hearing only deals with the voluntariness of the given statement. I was thus denied the opportunity to express how & why i was coerced. I wasn't able to explain my feelings and thoughts I developed as I was restraned of my liberties, which impacted my decision making ability



**Ground Eight:** Counsel failed to adequately and effectively challenge the voluntariness of Applicants statement and the absence of coersion.

**Supporting Facts:** Mr. Creech challenged the involuntariness of my statement with an argument that pertained to illegal detention that comverted into an arrest without probable cause during a Jackson V. Deno hearing. Coersive acts were committed. For example, the conversation I had with Sgt. Miller was manipulative, but what must be recognized is this took place during an illegal seizure. Due to lack of preparation to articulate the overt restraining acts Judge Hill was left perplexed not understand the defense offered by Mr. Creech. (Tr. P. 142, 24-25 Tr. P. 143, 1 Tr. P. 148, 8-9) He viewed the detention converting into an arrest, but purged of any taint by the Miranda warnings (Tr. P. 221, 3-18

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an



"unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States



Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be."

Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in

judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his

state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas

petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911

(4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir.

2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,

471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of

Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have

exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner

must "fairly present[] to the state court both the operative facts and the controlling legal principles

associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal

quotation marks and citation omitted). Thus, a federal court may consider only those issues which

have been properly presented to the state appellate courts with jurisdiction to decide them.

Generally, a federal habeas court should not review the merits of claims that would be found to be

procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence

v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v.

Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by

a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice



as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.      Summary Judgment Motion**

      **1.      Claims That Are Not Cognizable**

           **a.      Ground One**

In his Ground One, Fowler claims that the trial court erred in denying his request to charge

the jury on the crime of voluntary manslaughter.  Fowler asserts that there was evidence in the record

to support the charge.  The respondent asserts that this ground is not cognizable in the instant federal

habeas corpus action because it deals solely with an issue of state criminal law.  The court agrees.

The crime of voluntary manslaughter is defined by South Carolina law, see State v. Pittman,

647 S.E.2d 144, 167 (S.C. 2008) ("Voluntary manslaughter is the unlawful killing of a human being

in sudden heat of passion upon sufficient legal provocation."), and the standard as to what evidence

entitles a defendant to a voluntary manslaughter charge (or any charge, for that matter) is also set

forth by South Carolina law, see id. at 166-67 ("A court may eliminate the offense of manslaughter

where it clearly appears that there is no evidence whatsoever tending to reduce the crime from

murder to manslaughter.") (citing State v. Burriss, 513 S.E.2d 104, 109 (S.C. 1999)).  Trial counsel

requested a voluntary manslaughter charge, and the trial court declined to give the charge.  (App. at

535-45, ECF No. 28-3 at 37-47.)  Then Fowler raised the issue in his direct appeal (ECF No. 28-4),

but his convictions were ultimately affirmed by the court of appeals (ECF No. 28-6), and his petition

for writ of certiorari, which raised that issue, was denied (ECF No. 28-9).  This court cannot review

the state courts' decisions regarding state law.  "It is not the province of a federal habeas corpus court

to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62,

67-68 (1991).  As a result, the respondent's motion for summary judgment should be granted as to this ground.

### b.     Ground Two

In Fowler's Ground Two, he asserts that he was subject to an illegal seizure.  In his Petition, Fowler summarizes the facts leading up to his arrest and implies that he was arrested without probable cause in violation of his Fourth Amendment constitutional rights.  The respondent argues that Ground Two does not state a cognizable ground for habeas relief because Fowler was provided "the opportunity to raise Fourth Amendment claims in state court, and he did."  (ECF No. 28 at 55.)  The court agrees.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."  Stone v. Powell, 428 U.S. 465, 494-95 (1976); see also Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982) ("Stone v. Powell [ ] marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has the opportunity to litigate those claims in state court.").  In his response to the respondent's motion for summary judgment, Fowler fails to refute the respondent's contention—he merely argues that trial counsel "failed to adequately address the illegal detention that converted into an arrest without probable cause."  (ECF No. 31 at 10.)  The record reflects that trial counsel did challenge the initial detention and the subsequent arrest.  (App. at 138-46, ECF No. 28-1 at 140-48.)  Hence, Fowler has not shown that he did not have a full and fair opportunity to litigate the issue presented in Ground Two in state court.  Accordingly, respondent should be granted summary judgment on this claim.



### 2.     Procedural Default

The respondent argues that portions of Grounds Five and Six and Ground Eight in its entirety, all of which raise claims of ineffective assistance of trial counsel, are procedurally barred from federal habeas review.  Within his Ground Five, Fowler argues that trial counsel should have objected to the indictments because they were not signed by the chief administrative judge.  As part of his Ground Six, Fowler argues that trial counsel should have incorporated into the defense the fact that two .22 caliber bullets were found in the victims' car and should have introduced the bullets as exhibits.  The respondent argues that the PCR court did not address either of these issues in its order denying relief, and Fowler did not file a subsequent Rule 59(e) motion.  Thus, these issues were not preserved for Fowler's PCR appeal.  The court agrees that these claims are procedurally defaulted. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Moreover, these issues would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Fowler attempted to raise them now.  See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

While the court finds that portions of Fowler's Grounds Five and Six are procedurally defaulted, or barred from federal habeas review, such claims may nonetheless be considered by a federal court if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  Fowler has failed to



demonstrate either cause for the default or actual prejudice that resulted, and none is readily apparent from the record.

Turning to Ground Eight, there Fowler alleges that trial counsel was ineffective for failing to "adequately and effectively challenge the voluntariness of Applicants [sic] statement and the absence of coercion [sic]." (Pet., ECF No. 1 at 20.) Fowler explains this ground as follows:

> Mr. Creech challenged the involuntariness of my statement with an argument that pertained to an illegal detention that converted into an arrest without probable cause during a Jackson V. Deno hearing. Coersive acts were committed. For example, the conversation I had with Sgt. Miller was manipulative, but what must be recognized is this took place during an illegal seizure. Due to lack of preparation to articulate the overt restraining acts Judge Hill was left perplexed not understand the defense offered by Mr. Creech. (Tr. P. 142, 24-25 Tr. P. 143, 1 Tr. P. 148, 8-9) He viewed the detention converting into an arrest, but purged any taint by the Miranda warnings (Tr. P. 221, 3-18[).]

(Pet., ECF No. 1 at 20) (errors in original). The respondent argues that this claim is procedurally barred as this is not the same argument that was raised to and ruled upon by the PCR court. Though the ground itself is a verbatim recitation of one of his PCR grounds, a closer look at the specifics of the arguments made by Fowler in his PCR action reveals that the respondent is correct.

During the pre-trial hearing, trial counsel attempted to have Fowler's statement to police excluded, arguing that it was coerced. (App. at 110-12, ECF No. 28-1 at 112-14.) However, the trial court found that the statements were made voluntarily after Fowler was given his Miranda warnings and that there was no coercion. (App. at 134-35, ECF No. 28-1 at 136-37.) The trial court also found that the initial detention of Fowler was justified by reasonable suspicion. (App. at 134, ECF No. 28-1 at 136; App. at 465-66, ECF No. 28-2 at 184-85.)

At the PCR evidentiary hearing, Fowler testified that had he taken the stand during the

Jackson v. Denno[2] hearing, he would have been able to convey to the trial judge that his statement

had been coerced.  (App. at 658, ECF No. 28-3 at 160.)  Fowler later testified to his belief that his

statement was obtained through an arrest that was illegal—that "[i]t started with an illegal detention

that turned into—well, converted into an arrest without probable cause."  (App. at 665, ECF No. 28-

3 at 167.)  Fowler then explained that trial counsel had challenged the admission of the statement

by arguing it was coerced, but "in all actuality the argument should have been it was an illegal

detention that converted into an arrest without probable cause." (App. at 666, ECF No. 28-3 at 168.)

The PCR court rejected Fowler's contentions, specifically finding that "trial counsel presented a

detailed argument in favor of suppressing [Fowler's] statements" and further finding Fowler "failed

to articulate why trial counsel would have been more successful if he had instead argued about the

voluntariness of the detention."  (App. at 695, ECF No. 28-3 at 197.)

The court agrees with the respondent that Fowler's current argument—that trial counsel was

ineffective for failing to argue that the statement was coerced—switches the argument Fowler raised

at the PCR evidentiary hearing—that trial counsel was ineffective for failing to argue an illegal

detention rather than coercion.  Accordingly, this ground is procedurally barred, as it was not raised

---

[2] The Jackson Court enunciated that a criminal defendant has a "constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."  Jackson v. Denno, 378 U.S. 368, 376-77 (1964).



to and ruled upon by the PCR court, and Fowler failed to file a Rule 59(e) motion.[3] See Coleman, 501 U.S. at 722.

Therefore, the court finds that the above-referenced issues in Fowler's Grounds Five and Six and the entirety of Ground Eight are procedurally barred from federal habeas review.

### 3.    Ineffective Assistance of Counsel

The remaining grounds in the Petition all allege that trial counsel was ineffective during Fowler's trial for a variety of reasons.   A defendant has a constitutional right to the effective assistance of counsel.   To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.   With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

---

[3] The court would further note that even to the extent that Fowler's current argument could be construed as the same argument he raised in state court, Fowler has failed to show that the PCR court made unreasonable factual findings or misapplied Supreme Court precedent in rejecting the ineffective assistance of counsel claim.  See Strickland, 466 U.S. 668 (1984).  Indeed, the record supports the PCR court's finding that trial counsel made a comprehensive argument in an attempt to suppress Fowler's statement, (App. at 109-12, ECF No. 28-1 at 111-14; App. at 134-36, ECF No. 28-1 at 136-38), and there is no reason to believe that any of the arguments proffered by Fowler at the PCR hearing would have been more successful.



The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Fowler's petition. Therefore, the court first considers whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.



### a.     Relevant Trial Testimony

Before considering the state court's PCR testimony and decision, the evidence presented during Fowler's trial provides additional background in reviewing Fowler's claims in the instant Petition.

According to evidence presented by the State, on June 7, 2006, Susan Galloway pawned a necklace at Red's Pawn Shop in Greenville, South Carolina.  (App. at 277-80, ECF No. 28-1 at 279-82.)  While Galloway was inside the pawn shop, her friend, Mike Powell, and an acquaintance, Ron Harris, waited in the parking lot in Powell's Ford Escort station wagon.  (App. at 256-59, ECF No. 28-1 at 258-61.)  As Powell and Harris were sitting in the car, a blue Buick pulled up beside them, and two people exited the car.  (App. at 258-59, ECF No. 28-1 at 260-61.)  Fowler, one of the people who had exited the Buick, then went into the pawn shop.  (App. at 441, ECF No. 28-2 at 160.)  Inside the pawn shop, Galloway approached Fowler and asked him if he had any crack cocaine.  (App. at 441, ECF No. 28-2 at 160.)  Fowler told her that he did and instructed her to follow him.  (App. at 441, ECF No. 28-2 at 160.)

Galloway got back in Powell's car, and they followed the Buick to a location a few streets away.  (App. at 259-60, ECF No. 28-1 at 261-62.)  Fowler got out of the Buick and approached the passenger's side of Powell's station wagon.  (App. at 261-62, ECF No. 28-1 at 263-64.)  He was holding a gun.  (App. at 236-37, ECF No. 28-1 at 238-39.)  Fowler then pointed the gun at the occupants of the station wagon and told them to "just give [him] the money and everything [would] be okay."  (App. at 237, ECF No. 28-1 at 239.)  Galloway, who was holding  money at the time, refused to hand it over.  (App. at 261, ECF No. 28-1 at 263.)  Powell tried to put the car in gear, but Fowler told him not to move.  (App. at 239, ECF No. 28-1 at 241.)  When Galloway continued to refuse to give Fowler the money, he shot her.  (App. at 239, ECF No. 28-1 at 241.)  Then he shot



Powell. (App. at 239, ECF No. 28-1 at 241.) Then he aimed the gun at Harris and shot. (App. at 239-40, ECF No. 28-1 at 241-42.) Fowler then returned to the Buick, and the Buick drove away. (App. at 210-13, ECF No. 28-1 at 212-15.)

Fowler's own testimony at trial regarding the shooting differs from what was presented by the State. He testified that he was in Red's Pawn Shop with Diana "Nicki" Tisdale, whom he had been living with, to pawn a hydraulic jack when Galloway approached him and asked if he had any "hard" (a.k.a. crack cocaine). (App. at 472-76, ECF No. 28-2 at 191-95.) Fowler told Galloway to wait until they had left the pawn shop, and once outside, he told her to follow him. (App. at 476-77, ECF No. 28-2 at 195-96.) According to Fowler's testimony, he did not have any crack, but he had flex, an "artificial crack." (App. at 477, ECF No. 28-2 at 196.) Fowler then got in his car with Tisdale and Valencia Sullivan, Fowler's girlfriend, and they drove a few blocks away, and Powell's car followed them. (App. at 478, ECF No. 28-2 at 197.) Once they stopped, Fowler reached in the back seat for a red bag that had his flex and his pistol. (App. at 479, ECF No. 28-2 at 198.) Fowler then approached Powell's car on the passenger's side and asked what they wanted. (App. at 479, ECF No. 28-2 at 198.) Galloway responded, "'Let me get $40 worth of hard.'" (App. at 479, ECF No. 28-2 at 198.) According to Fowler, the man in the back seat then asked for four hundred dollars worth of crack. (App. at 479, ECF No. 28-2 at 198.) Fowler testified that this made him nervous because he did not know these people, but they were asking for a large amount of crack. (App. at 480, ECF No. 28-2 at 199.) Galloway then reached in her purse and got out forty dollars, but before handing it to Fowler, she snatched her hand away and started to go toward her purse again. (App. at 480-81, ECF No. 28-2 at 199-200.) Fowler believed she was going to pull a weapon out. (App. at 481, ECF No. 28-2 at 200.) Fowler further testified that as Galloway pulled away with the money, Harris (who was in the backseat) reached his hand in his pocket though his money was already in

OJG

his lap.  (App. at 482-83, ECF No. 28-2 at 201-02.)  Fowler saw a bulge in Harris's pocket and thought he was getting a gun, as well.  (App. at 483, ECF No. 28-2 at 202.)  Fowler testified that, as all of this was going on, the driver would not make eye contact and had his arms down by his sides.  (App. at 483, ECF No. 28-2 at 202.)  According to his own testimony, Fowler grabbed his pistol out of the red bag and "reacted.  Like I said, I freaked out and I shot at all three of the people." (App. at 483, ECF No. 28-2 at 202.)  Fowler, Tisdale, and Sullivan then returned to their house. (App. at 485, ECF No. 28-2 at 204.)

After the shooting, Harris realized he had not been shot and ran across the street to a restaurant where he asked someone to call 9-1-1.  (App. at 241-42, ECF No. 28-1 at 243-44.)  Harris waited for the police to arrive and then walked back to the location of the shooting and told the police officers that he had been in the car at the time of the shooting.  (App. at 242, ECF No. 28-1 at 244.)  Harris described the car that the shooter had been in and told the police they had first encountered the shooter at the nearby pawn shop.  (App. at 242, ECF No. 28-1 at 244.)  Based on the tip about the pawn shop, the police were able to track down Tisdale, who had given her information when she pawned the jack.  (App. at 286-90, ECF No. 28-2 at 5-9.)  Police officers went to her residence and saw the blue Buick in the driveway when they arrived.  (App. at 291, ECF No. 28-2 at 10; App. at 355, ECF No. 28-2 at 74.)  When the officers knocked on the front door of Tisdale's residence, Fowler came to the door.  (App. at 356, ECF No. 28-2 at 75.)  Fowler became noticeably nervous, and the officers were concerned he would attempt to flee, so they handcuffed him and had him sit in the front passenger's seat of one of the patrol vehicles.  (App. at 357-58, ECF No. 28-2 at 76-77.)  While Fowler and the police officers were sitting there, Detective Tim Conroy explained to Fowler that they were investigating an incident and would be getting search warrants for the blue Buick and the residence, but Fowler consented to the search, stating "You can go ahead



and search the trailer and the car.  And if you don't find anything does that mean I'm off the hook?  Are you going to let me go?" (App. at 358, ECF No. 28-2 at 77.)

Fowler later made incriminating statements to Investigator Matthew Justice, indicating he had shot the victims but that things had not gone as planned.  (App. at 359, ECF No. 28-2 at 78.)  Fowler also showed the police officers where the gun used in the shooting was hidden inside Tisdale's residence.  (App. at 430-31, ECF No. 28-2 at 149-50; see also App. at 322-27, ECF No. 28-2 at 41-46.)

### b.    Ground Three

In Ground Three, Fowler alleges that trial counsel provided ineffective representation by failing to "adequately and effectively challenge the legality of the state[']s search warrants." (Pet., ECF No. 1 at 8.)  In particular, Fowler claims that there was no search warrant for Tisdale's residence, only for the blue Buick.  He also asserts that the information in the affidavits attached to the warrants is false.  The respondent contends that the PCR court made reasonable factual findings and reasonably applied federal law in denying this claim of ineffective assistance of counsel.  For the reasons that follow, the court finds that the PCR court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

The trial record shows that trial counsel attempted to have the evidence that was seized pursuant to the search warrants suppressed.  (App. at 136-57, ECF No. 28-1 at 138-59.)  Trial counsel argued that Fowler's consent was not valid.  (App. at 136-44, ECF No. 28-1 at 138-46.)  He also argued that the officer who obtained the search warrants did not have personal knowledge of the facts but never told the magistrate that.  (App. at 149-56, ECF No. 28-1 at 151-58.)  The trial

court ultimately ruled that Fowler did not have standing to challenge the search warrants themselves, but even if he did, he had given consent to the search. (App. at 156-57, ECF No. 28-1 at 158-59.)

During the PCR evidentiary hearing, Fowler indicated that the search warrants were obtained by telling the magistrate that the legal resident of the home was also the driver of the vehicle, but Fowler claimed the officer who obtained the search warrant did not know any of that information. (App. at 672-74, ECF No. 28-3 at 174-76.) The PCR court rejected Fowler's arguments, finding as follows:

> [T]he Applicant failed to meet his burden of proving trial counsel did not properly challenge the search warrant. This Court has examined the trial transcript and notes trial counsel presented a comprehensive argument in favor of suppressing evidence obtained pursuant to the search in this case. (Trial transcript, pp. 136-56). This Court notes, however, that the Applicant consented to the search while the officers were waiting for the procurement of a search warrant. The Applicant has failed to articulate what else trial counsel should have argued that would have resulted in the suppression of the evidence.

(App. at 695, ECF No. 28-3 at 197.)

As outlined above, the record supports the PCR court's findings that trial counsel challenged the validity of the search warrants and attempted to have the evidence seized pursuant to the warrants suppressed. The record also supports the finding that Fowler consented to the search—both the trial court and the PCR court found that to be the case. Additionally, though Fowler claims that police only had a search warrant for the Buick and not for the residence, the record indicates that both a search warrant for a house and for a car were defense exhibits for identification. (App. at 6, ECF No. 28-1 at 8; App. at 150-53, ECF No. 28-1 at 152-55.) The warrants themselves have not been included in the record provided to this court, and there is nothing to support Fowler's claim that there was no warrant for the residence. Moreover, the trial court's finding that Fowler gave consent for

the search of both the car and the residence would seemingly cure any defect in the search warrants themselves.

In his response to the respondent's motion for summary judgment, Fowler generally reasserts the arguments in his Petition, which have been addressed above.  He also asserts a new claim that trial counsel "should have objected to the question he asked that was taken as a directive of consent." (ECF No. 31 at 14.)  This challenge is outside the scope of the grounds presented in his Petition and is not properly before the court.  See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

Based on the foregoing, considering the totality of the circumstances, the court finds the state court's analysis to be reasonable and concludes that Fowler has failed to demonstrate that the state court unreasonably misapplied clearly established federal law as decided by the Supreme Court in its ruling or that the state court made objectively unreasonable factual findings.  See 28 U.S.C. § 2254(d), (e)(1).  Thus, the respondent's motion for summary judgment should be granted as to Ground Three.

### c.    Ground Four

In his Ground Four, Fowler claims that trial counsel provided ineffective assistance by failing to "adequately and effectively challenge the legality of Applicant's arrest warrants." (Pet., ECF No. 1 at 10.)  Fowler notes that the magistrate did not sign the arrest warrants.  Furthermore, Fowler claims that part of the probable cause is "an unproved accusation" and the other part of the probable cause occurred after the start of the detention.  (Pet., ECF No. 1 at 10.)  The respondent asserts that



the PCR court made a reasonable and correct determination of this issue, which is entitled to deference in this action.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

During the PCR evidentiary hearing, PCR counsel presented trial counsel with the arrest warrants, which were not signed by the issuing judge, and asked if trial counsel made any motions challenging the arrest warrants based on the lack of a signature.  (App. at 647-48, ECF No. 28-3 at 149-50.)  Trial counsel responded that he had not made any such motions.  (App. at 647-48, ECF No. 28-3 at 149-50.)  But trial counsel testified that challenging the arrest warrants likely would not have changed anything because Fowler had been tried on an indictment that had been presented to the grand jury, and "the judge failing to sign the arrest warrant probably would have had no effect on anything in the case."  (App. at 648, ECF No. 28-3 at 150.)  Fowler, on the other hand, testified to his belief that his statement should have been suppressed because it was made after his arrest and because the arrest warrants were not legitimate.  (App. at 664-65, ECF No. 28-3 at 166-67.)

The PCR court found that Fowler failed to meet his burden of showing that trial counsel did not properly challenge the arrest warrants.  (App. at 695-96, ECF No. 28-3 at 197-98.)  The PCR court agreed with trial counsel's assessment that challenging the arrest warrants would not have changed anything or ended the case.  (App. at 695, ECF No. 28-3 at 197.)  The PCR court specifically found that even assuming there was some error in the arrest warrants, Fowler failed to prove prejudice.  (App. at 695-96, ECF No. 28-3 at 197-98.)

Fowler argues in his response to the motion for summary judgment that any defect in the arrest warrant invalidates the seizure and renders any evidence obtained during the seizure fruit of the poisonous tree.  (ECF No. 31 at 14.)  However, as the respondent notes, Fowler's initial detention



was found to be lawful as an investigative detention, (App. at 145-46, ECF No. 28-1 at 147-48), and during that detention, police officers gathered additional information, which gave them probable cause to arrest Fowler.  For example, Sullivan told police that Fowler was the shooter.  (App. at 76-77, ECF No. 28-1 at 78-79.)  And Fowler himself indicated he wanted to get everything "off his chest," and he directed police to the location of the gun.  (App. at 78-80, ECF No. 28-1 at 80-82.) Fowler also gave a statement to police prior to the arrest warrant being obtained.  (App. at 54-64, ECF No. 28-1 at 56-66.)  As the respondent further notes, under South Carolina law, the finding of probable cause by the grand jury obviates a defect in the arrest warrant.  See Thompson v. State, 164 S.E.2d 760, 761 (S.C. 1968)  (indicating that even when the initial process used to effect an arrest was improper, that is cured by a grand jury with proper jurisdiction issuing an indictment) (citing State v. Walker, 101 S.E.2d 826 (S.C. 1958)).

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Fowler cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings.  See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  Thus, Fowler cannot show "there was no reasonable basis" for the state appellate court to deny relief.  Harrington, 562 U.S. at 98.  As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 562 U.S. at 101.  Therefore, the respondent's motion for summary judgment should be granted as to Ground Four.



### d.    Ground Five

In his Ground Five, Fowler argues that trial counsel failed to "adequately and effectively challenge [his] indictments." (Pet., ECF No. 1 at 18.)  He claims the indictments do not comply with South Carolina Rule of Criminal Procedure 3(c) and were not accepted by Judge John C. Few.  As explained above, Fowler's argument regarding the acceptance of the indictments by Judge Few is procedurally barred.  As to the remaining argument regarding counsel's failure to challenge the indictments based on South Carolina Criminal Procedure Rule 3(c), that claim was rejected by the PCR court.  The respondent contends that the PCR court's determination is fully supported by the record and demonstrates a reasonable application of federal law.  This court agrees.

While Fowler testified at the PCR evidentiary hearing that trial counsel should have challenged the indictments because he was not indicted within ninety days of his arrest as required by South Carolina Criminal Procedure Rule 3(c) (App. at 660-61, ECF No. 28-3 at 162-63), the PCR court rejected that argument (App. at 696, ECF No. 28-3 at 198).  The PCR court found that under South Carolina law the failure to indict within the ninety-day period does not automatically nullify the warrants.  (App. at 696, ECF No. 28-3 at 198 (citing State v. Culbreath, 316 S.E.2d 681, 681 (1984)).)  Additionally, the PCR court found that Fowler failed to provide any evidence that prejudice resulted from the delay.  (App. at 696, ECF No. 28-3 at 198.)  Accordingly, the PCR court denied and dismissed this same claim.

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Fowler cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings.  See

<u>Williams</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  Thus, Fowler cannot show "there was no reasonable basis" for the state appellate court to deny relief.  <u>Harrington</u>, 532 U.S. at 98.

In response to the motion for summary judgment, Fowler mostly reiterates the arguments raised in his Petition, which have been addressed above, but he also asserts he was "never properly indicted, therefore according to the law he was never informed of the charges being brought against him."  (ECF No. 31 at 16.)  This claim is outside the scope of the grounds presented and is not properly before the court.  <u>See</u> <u>Bridgeport Music, Inc.</u>, 508 F.3d at 400; <u>White v. Roche Biomedical Labs, Inc.</u>, 807 F. Supp. at 1216.  Additionally, there is no support for the allegation that Fowler was not on notice of the charges against him as a result of any deficiencies in the indictments.

  **e.  Ground Six**

In his Ground Six, Fowler asserts that trial counsel was ineffective for failing to incorporate into Fowler's defense the existence of two .22 live bullets found in the victims' car—more specifically, he believes trial counsel should have introduced the bullets as exhibits and should have referenced them in his closing argument.  As already discussed herein, the allegations that trial counsel should have incorporated the bullets in the defense theory and should have introduced the bullets as exhibits are procedurally barred in this action.  However, the PCR court did address the allegation that trial counsel was ineffective for failing to mention the bullets in his closing argument and found that allegation to be without merit.  The respondent argues that the PCR court's denial and dismissal of this same claim was reasonable and is entitled to deference in this action.  This court agrees.

The fact that two .22 caliber bullets were found in the victims' car was brought out by trial counsel during his cross-examination of Harris.  (App. at 248-49, ECF No. 28-1 at 250-51.)  The State later asked Powell about the .22 caliber bullets.  (App. at 258, ECF No. 28-1 at 260.)  Powell



testified there were .22 bullets scattered throughout the car when he got it, and he had not cleaned them out because he did not own a gun and "didn't have nothing to do with them." (App. at 258, ECF No. 28-1 at 260.) The State later presented a firearms expert who testified (among other things) that the .22 caliber projectiles found in Powell's car had "substantially corroded." (App. at 400, ECF No. 28-2 at 119.) In his closing argument, trial counsel made the following mention of the bullets:

> But what you've got to consider is this—what you've got to consider is this—the judge is going to tell you about his right—all of our right—to act on appearances. If it appeared—if he thought it was reasonable to think that someone in that car was armed, then he can shoot in self-defense, even if it turns out later that he was wrong. Even if it turns out later that he was wrong.
>
> Now, these folks have gotten on the stand and said they didn't have a weapon on them. Never found a weapon. **There were some of these bullets that were found in the car but there was never a weapon found.** So even if he was wrong but it appeared to him, then he can shoot in self-defense. That's what he did in this case.

(App. at 550-51, ECF No. 28-3 at 52-53) (emphasis added).

At the PCR evidentiary hearing, Fowler claimed that trial counsel "never spoke on [the .22 bullets] period." (App. at 675, ECF No. 28-3 at 177.) The PCR court rejected the claim that trial counsel was ineffective for failing to mention the .22 caliber bullets during his closing argument, finding Fowler's contention that the existence of the bullets supported his self-defense argument to be "entirely speculative" and further finding that Fowler failed to show any prejudice. (App. at 696, ECF No. 28-3 at 198.)

It was not unreasonable for the PCR court to deny and dismiss this claim of ineffective assistance of counsel. Notably, contrary to Fowler's claim, the record shows that trial counsel did mention the bullets during his closing argument. Thus, trial counsel was not deficient in that respect. Moreover, based on this court's review of the record, it was not unreasonable for the PCR court to conclude that Fowler failed to show prejudice. See Strickland, 466 U.S. 668, 694 ("The defendant



must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). As such, it is recommended that the respondent's motion for summary judgment be granted as to Ground Six.

### f.     Ground Seven

In Ground Seven, Fowler argues trial counsel was ineffective for advising him not to testify during the Jackson v. Denno hearing in his case. The respondent argues that in denying and dismissing this same claim, the PCR court made reasonable factual findings and reasonably applied federal precedent.

The record confirms that Fowler did not testify during the Jackson v. Denno hearing. (App. at 44-136, ECF No. 28-1 at 46-138.) At the PCR evidentiary hearing, trial counsel explained that he did not want Fowler "to take the stand in the Jackson v. Denno hearing and [the State] get a preview of his testimony. . . . [T]he prosecution would then know exactly what he's going to testify to at the trial . . . . That just gives them . . . a practice run . . . for the trial and gives them an advantage . . . ." (App. at 644, ECF No. 28-3 at 146.) When asked if he thought Fowler would have done himself any good by testifying during the Jackson v. Denno hearing, trial counsel responded, "Probably not." (App. at 644, ECF No. 28-3 at 146.) During his testimony at the PCR evidentiary hearing, Fowler confirmed that he and trial counsel discussed why trial counsel did not believe it was a good idea for Fowler to testify during the Jackson v. Denno. (App. at 656-57, ECF No. 28-3 at 158-59.) But Fowler believed he would have been able to tell the trial judge that he had been coerced. (App. at 658-60, ECF No. 28-3 at 160-62.) Fowler then testified that he was told if he did not tell the police officers what happened then Sullivan and Tisdale would get life sentences along with him. (App. at 658-59, ECF No. 28-3 at 160-61.) According to Fowler, he attempted to keep



them from getting in trouble by taking all of the blame on himself.  (App. at 658, ECF No. 28-3 at 160.)

The PCR court found that Fowler failed to meet his burden of proving trial counsel did not properly handle the <u>Jackson v. Denno</u> hearing.  (App. at 694-95, ECF No. 28-3 at 196-97.)  The PCR court specifically found "both that trial counsel's testimony is credible and that he articulated a valid strategic reason he advised the Applicant not to testify."  (App. at 695, ECF No. 28-3 at 197.)

Based on this court's review of the record, Fowler has failed to establish that by advising Fowler not to testify during the <u>Jackson v. Denno</u> hearing trial counsel was ineffective.  <u>Strickland</u>, 466 U.S. at 694; <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of <u>Strickland</u>, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'").  Moreover, Fowler has not demonstrated that the state courts unreasonably misapplied any clearly established federal law or made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 410; <u>see also</u> 28 U.S.C. § 2254(e)(1) (stating that state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence).  Accordingly, he has not shown that habeas relief is warranted as to this ground.

In his response to the motion for summary judgment, Fowler shifts his argument regarding the <u>Jackson v. Denno</u> hearing, focusing less on the fact that trial counsel advised Fowler not to testify and focusing more on trial counsel's arguments during the hearing.  (ECF No. 31 at 17-19.)  As explained previously with respect to Fowler's Ground Eight, Fowler's current argument appears to be the reverse of the one made to the PCR court, <u>see</u> <u>supra</u> pp. 14-15, but in any case, the PCR court found "trial counsel presented a detailed argument in favor of suppressing the Applicant's



statements" and Fowler failed to convince the PCR court that trial counsel would have been more successful with an alternative argument. (App. at 695, ECF No. 28-3 at 197.) Fowler has failed to establish either that the PCR court made unreasonable factual findings or misapplied clearly established Supreme Court precedent in rejecting Fowler's claim of ineffective assistance of counsel regarding trial counsel's handling of the Jackson v. Denno hearing. For all of the above reasons, this court recommends granting the respondent's motion for summary judgment as to Ground Seven.

### 4. Evidentiary Hearing

Fowler also requests an evidentiary hearing on this Petition. However, a federal evidentiary hearing is permissible for a particular claim only if, among other requirements, the claim was not "adjudicated on the merits by a state court." Cullen v. Pinholster, 131 S. Ct. 1388, 1400 (2011). If it was, a state prisoner is limited to "the record that was before that state court" in seeking federal habeas relief. Id.; see also 28 U.S.C. § 2254(d)(2). In this case, Fowler has failed to establish any exception to the general rule that review for habeas corpus purposes is generally limited to the evidence that was placed before the state court applies here. See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2). Therefore, such a request should be denied.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 27) be granted and Fowler's Petition denied.

April 18, 2016                                  Paige J. Gossett
Columbia, South Carolina                        UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).